

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00061-CR

---------

CAREY LAMAR MORRISON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                             STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points that concern the trial court's jury charge, appellant Carey Lamar Morrison appeals his conviction for burglary of a habitation. We affirm.

## Background Facts

One summer evening in 2010, twelve-year-old Jorge Perez was in the garage of the home of his grandfather, Jesus Perez, when appellant walked toward Jorge, asked who was in the house, grabbed Jorge's collar, and took

---

[1]See Tex. R. App. P. 47.4.

Jorge into the house. Appellant wore a hoodie, had a bandana over his mouth, and pressed a silver gun against Jorge's back.[2] When Jorge and appellant entered the house, Jesus was watching television in the living room. Appellant tapped Jesus on a shoulder and asked for money. Jesus gave a wallet that contained approximately $900 to appellant. Appellant asked for more money, but Jesus told him that there was no more, which made appellant angry.[3] Appellant went with Jorge and Jesus into various parts of the house.

Eventually, Jorge's uncle (and Jesus's son), Juan, who had heard a voice that he did not recognize, came out of a restroom and saw appellant. Juan looked at appellant's gun and determined that it was plastic, and then Jesus, Juan, and appellant began to tussle.[4] Appellant, who lost possession of the money and the gun, tried to leave through the garage, but Juan and Jesus reached him, slammed him into a wall, and continued to fight against him. During the altercation, appellant grabbed a plastic toy and hit Jesus with it twice on Jesus's head. Appellant also kicked Jesus's wife when she tried to help Jesus and Juan. As appellant continued to scream and fight, one of Jorge's

---

[2]Jorge testified at trial that he became afraid and felt threatened when appellant approached him. The police later determined that appellant had been carrying a BB gun.

[3]Jesus said that he gave appellant money so that appellant would not "beat up [Jorge]." Jesus also testified that he was worried for Jorge's safety because appellant had a gun.

[4]Fort Worth Police Department Officer Tom Gierling testified that the gun was made of metal.

2

cousins called 911, and a few minutes later, the police arrived. Officers struggled to subdue appellant, but they eventually arrested him. The officers took pictures of Jesus, who had scrapes on the side of his face, redness along his hairline, and an "impression like something [had hit] him."

A Tarrant County grand jury indicted appellant with burglary of a habitation. Specifically, the indictment alleged that appellant had committed burglary by, without Jorge's consent, intentionally or knowingly entering a habitation with the intent to commit robbery.[5] Appellant retained counsel and pled not guilty. During the trial, appellant did not ask questions of any witness and did not call any. After the State's closing argument, appellant's counsel gave the following closing argument, in its entirety:

> Did the government prove the charge against [appellant]? If they did, then you have to find him guilty. If -- but if they didn't prove every element of that charge against [appellant], every element, you have to find him not guilty. That's the law, and that's what you swore you would abide by. Okay?
>
> So when you go back there and think about it, go through the law, if . . . they proved their case, you'll find him guilty. But if they did not prove even one element, then you have to find him not guilty.
>
> Thank you.

The jury deliberated for fifteen minutes before it found appellant guilty. After appellant testified in the punishment phase of his trial, the jury assessed his

---

[5]The indictment, therefore, charged appellant with a first-degree felony. *See* Tex. Penal Code Ann. §§ 29.02(a), 30.02(a)(1), (d) (West 2011).

punishment at five years' confinement. The trial court sentenced appellant accordingly, and he brought this appeal.

## The Robbery Instruction

In his first point, appellant argues that the trial court erred by including an instruction in the guilt-phase jury charge that stated, "Our law provides that a person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly *causes bodily injury* or threatens or places another in fear of imminent bodily injury or death." [Emphasis added.] Appellant argues that the italicized part of this instruction was erroneous because there was "no testimony to support the theory that [he] inflicted 'bodily injury' upon anyone." More specifically, appellant contends that the instruction was improper because although the evidence showed that appellant hit Jesus with a toy, Jesus did not testify that this caused him physical pain, illness, or impairment of his physical condition, and the jury was therefore able to consider a definition of robbery that did not apply to the facts of the case.[6] At trial, after both parties rested, the following exchange occurred:

---

[6]*See* Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2011) (defining bodily injury as "physical pain, illness, or any impairment of physical condition"). "Bodily injury" broadly encompasses "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

4

[DEFENSE COUNSEL]: . . . We don't think there was any testimony . . . where the witness testified that they had, indeed, in fact, suffered bodily injury from being hit with anything. . . . [T]here was some testimony by the grown son that the older gentleman had been hit with that plastic toy, but . . . there was no testimony from the actual person who got hit as to whether that caused bodily injury or not. . . .

THE COURT: . . . I'm going to construe that as an objection and overrule it.

Appellate review of alleged error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred; if so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32. A trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007).

The factual contention undergirding appellant's first point—that there was no testimony that someone suffered bodily injury as a result of appellant's crime—is belied by the record. As we have explained above, the evidence showed that appellant hit Jesus with a plastic toy and that officers saw scrapes on the side of Jesus's face, redness along his hairline, and an impression like something had hit him. This evidence allowed for an inference that Jesus suffered bodily injury despite the fact that Jesus did not testify directly that he had suffered physical pain, illness, or impairment of his physical condition.

5

*See Wingfield v. State*, 282 S.W.3d 102, 106 (Tex. App.—Fort Worth 2009, pet. ref'd) ("Although Russell did not affirmatively testify to any pain, the State entered into evidence a picture of Russell's mouth showing a laceration on his lower lip. . . . [T]he jury could have reasonably inferred that Russell suffered pain . . . ."); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (holding that although no witness directly testified that the victim suffered pain as a result of being struck in the mouth by her husband's fist, the evidence was sufficient to prove bodily injury because there was evidence that the victim's mouth swelled, bruised, and was cut); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) ("The fact of a physical intrusion on the body in the form of a cut or scrape can itself be sufficient evidence of the associated physical pain necessary to show 'bodily injury.'")

We hold that the record precludes the factual assertion upon which appellant conditions his first point, and we therefore conclude that the jury charge could not be erroneous for the reason stated by appellant in that point.[7] We overrule appellant's first point.

---

[7]The State argues that the instruction about the definition of robbery that we have quoted above would have been proper even if there had not been evidence of bodily injury. We decline to address this argument, and we express no opinion on it. *See* Tex. R. App. P. 47.1 (requiring appellate courts to address "every issue . . . necessary to final disposition of the appeal"); *Smith v. State*, 316 S.W.3d 688, 700 n.2 (Tex. App.—Fort Worth 2010, pet. ref'd).

**Jury Unanimity**

In his second point, appellant contends that the guilt-phase jury charge erroneously allowed the jurors to return a verdict that was not unanimous. The jury charge notified the jury that its verdict must have been "by a unanimous vote." The charge also instructed the jury,

> [I]f you find and believe from the evidence beyond a reasonable doubt, that [appellant] . . . did intentionally or knowingly, without the effective consent of Jorge Perez, the owner thereof, enter a habitation with intent to commit robbery, as charged in the Indictment, then you will find [appellant] guilty of burglary of a habitation with intent to commit robbery . . . .

Appellant contends that to appropriately sustain his burglary conviction, the charge should have required the jury to unanimously decide whether appellant entered the habitation with the intent to commit robbery by threat or, alternatively, entered the habitation with the intent to commit robbery causing bodily injury. *See* Tex. Penal Code Ann. §§ 29.02(a), 30.02(a)(1).

Jury unanimity is required in all criminal cases by the Texas constitution and the code of criminal procedure. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). Thus, every juror must agree that "the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745; *see Bundy v. State*, 280 S.W.3d 425, 431 (Tex. App.—Fort Worth 2009, pet. ref'd). But this does not mean that the "jury must unanimously find that the defendant committed that crime in one specific

way." *Landrian*, 268 S.W.3d at 535. In other words, "[t]he unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents." *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). The court of criminal appeals has identified three situations in which non-unanimity may occur:

> First, non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed. For example, if the State charges the defendant with the theft of one item and the evidence shows that the defendant had in fact stolen two of the same items, the jury's verdict may not be unanimous as to which of the two items the defendant stole. To ensure a unanimous verdict in this situation, the jury charge would have to make clear that the jury must be unanimous about which of the two items was the subject of the single theft.

> Second, non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

> And third and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute.[8] To ensure unanimity in this situation, the

---

[8]This occurred in *Ngo* when the defendant had been charged with credit card abuse, and his indictment alleged that he had stolen a credit card, had received a stolen credit card, and had fraudulently presented a credit card to pay for goods and services. 175 S.W.3d at 740–41. The application paragraphs of the jury charge instructed the jury to find Ngo guilty if the jury concluded that he had committed any of the three acts in the indictment, and the jury charge did not

8

> charge would need to instruct the jury that it has to be unanimous about which statutory provision, among those available based on the facts, the defendant violated.

*Cosio*, 353 S.W.3d at 771–72 (citations and footnotes omitted).

None of the dangers for non-unanimity that the court of criminal appeals described in *Cosio* or in *Ngo* are present in this case. Here, to obtain a burglary conviction, the State charged appellant with committing only one criminal act: entering a habitation, without consent, with the intent to commit a felony (in this case, robbery). *See* Tex. Penal Code Ann. § 30.02(a)(1). The State was not required to prove that appellant committed robbery; it was only required to prove that he intended to do so when he entered Jorge's habitation. *See Gonzales v. State*, 517 S.W.2d 785, 788 (Tex. Crim. App. 1975); *Cotton v. State*, 645 S.W.2d 907, 908 (Tex. App.—Fort Worth 1983, no pet.). As the court of criminal appeals explained in *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006), the "gravamen of a burglary is the entry without the effective consent of the owner and with the requisite mental state. . . . The offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed." Thus, we conclude that under section 30.02 of the penal code, the possible intended felonies that coordinate with a defendant's entering a habitation without consent do not create separate offenses, and the jury is not required to be unanimous about the elements of those underlying felonies.

---

state that the jury was required to unanimously agree on which of the three acts that Ngo committed. *Id.* at 742 & n.5.

Instead, the jury must simply be unanimous that the defendant entered a habitation with the intent to commit a felony. *See White v. State*, 208 S.W.3d 467, 468–69 (Tex. Crim. App. 2006) (holding that when the State alleged two felonies that could have served as the basis for a felony murder conviction, the jury was not required to be unanimous concerning which underlying felony that the defendant had committed); *Martinez*, 129 S.W.3d at 103 (holding that a jury was not required to agree on which underlying felony a defendant committed, between robbery or aggravated sexual assault, when the jury convicted him of capital murder); *Davis v. State*, 268 S.W.3d 683, 711 (Tex. App.—Fort Worth 2008, pet. ref'd) (explaining that jury unanimity is "not violated . . . when the jury disagrees on alternate theories of the defendant's *mens rea* at the time of the offense" and therefore holding that the jury was not required to be unanimous about which mental state the defendant had when he committed murder).

Like the felony murder statute at issue in *White*, which required that the defendant committed or attempted to commit "a felony" to sustain a felony murder conviction, section 30.02(a)(1) required that appellant intended to commit "a felony" to sustain appellant's burglary conviction. *See* Tex. Penal Code Ann. § 30.02(a)(1); *see also Ratliff v. State*, 320 S.W.3d 857, 864 (Tex. App.—Fort Worth 2010, pet. ref'd) (explaining that the question of what a jury must be unanimous about is determined by the legislative intent of the applicable statute). Thus, the jury was required to unanimously agree that appellant intended to commit a predicate felony when he entered the habitation, and because robbery

10

was the only felony alleged, the jury was required to unanimously agree that appellant intended to commit robbery. *See White*, 208 S.W.3d at 468. But under the rationale of the cases herein, and under the facts of this case, we hold that the jury was not required to unanimously agree about whether, at the time appellant entered the habitation, he intended to cause bodily injury or to threaten bodily injury or death, which are the methods of committing robbery. *See id.* ("[I]n cases like this, where some of the jurors might believe that the defendant committed felony A and the rest of the jurors might believe that he committed felony B, the jury has unanimously found that the defendant committed a 'felony.'"); *see also Valdez v. State*, 218 S.W.3d 82, 84–85 (Tex. Crim. App. 2007) (holding that a jury was not required to unanimously decide which two of several alleged prior felony convictions supported the enhancement of the defendant's punishment because the penal code's enhancement provision states only that the State is required to prove "two felony offenses"); *Adeyanju v. State*, No. 14-08-00305-CR, 2009 WL 3371369, at *4–5 (Tex. App.—Houston [14th Dist.] July 7, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that a jury was not required to unanimously agree about how a defendant committed money laundering when money laundering was a predicate offense of engaging in organized criminal activity).

For these reasons, we disagree with appellant's contention that the guilt-phase jury charge erroneously allowed for a non-unanimous verdict, and we overrule his second point.

11

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 26, 2012